FILED
2016 MAR 1 A 11:25
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| In re: | : | | |
| | : | Case No. | 09-29574-GLT |
| **PAUL E. KLAAS** and **BETH ANN KLAAS**, | : | | |
| | : | Adv. Proc. | 15-02087-GLT |
| Debtors. | : | | |
| | : | | |
| | : | Chapter 13 | |
| **ELIZABETH A. SHOVLIN,** | : | | |
| | : | Related to | |
| | : | AP Dkt. Nos. 1, 16, 20[1] | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| **PAUL E. KLAAS, BETH ANN KLAAS,** | : | | |
| and **RONDA J. WINNECOUR**, chapter | : | | |
| 13 trustee, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

Creditor Elizabeth A. Shovlin commenced this adversary proceeding to block the issuance of a discharge order in favor of the Debtors, Paul and Beth Ann Klaas in their chapter 13 bankruptcy case.  Shovlin contends the Debtors are ineligible for a discharge because they failed to complete their plan payments in a timely manner and were late in submitting proof of their participation in a financial management course.  The Debtors filed a *Motion for Summary Judgment*, seeking judgment against Shovlin on the basis that all of the requirements necessary for a discharge under section 1328(a) of the Bankruptcy Code have been satisfied.  Having found no disputed material facts in this matter, the only issues before the Court are whether a material plan payment default may be cured within a reasonable time and whether the Debtors failed to

---

[1]     References to the bankruptcy case docket, <u>In re Klaas</u>, 09-29574-GLT, are cited as Bankr. Dkt. No. References to the adversary proceeding docket, <u>Shovlin v. Klaas</u>, 14-02087-GLT, are cited as AP Dkt. No.

timely submit certificates evidencing their completion of the financial management course. Because the Debtors provided their course certificates before the last plan payment was made, and since the Debtors cured the payment default within 46 days, the Court concludes that any such delays were neither material nor prejudicial to the Debtors' creditors. Consequently, the Court shall grant summary judgment in favor of the Debtors and shall overrule Shovlin's complaint.

## I.

The Debtors filed a joint chapter 13 petition on December 31, 2009, hoping to ease the burden of $20,639.05 in prepetition arrears on their home mortgage.[2]  Guy Petrone was one of their creditors.  He filed an unsecured claim in the amount of $166,538.26 for unpaid rents and loans.  Petrone subsequently transferred the claim to his daughter, Shovlin.[3]

The Debtors filed their first chapter 13 plan on January 22, 2010, proposing a monthly payment of $2,485 over a 60-month term.  The plan allocated a payment of $1,449 per month to Chase for obligations under their home mortgage loan.[4]  This first plan was confirmed on an interim basis on March 5, 2010.[5]

On January 19, 2011, Chase filed a "notice of mortgage payment change" which increased the monthly mortgage payment to $1,922.97 per month.[6]  To accommodate the new

---

[2]  Joint Exhibit List and Joint Statement of Facts at ¶1 ("Stip.") [AP Dkt. No. 26]; see also Claim No. 16-1 filed by Deutsche Bank National Trust Company, as trustee for FFMLT Trust 2004-FF3, Mortgage Pass-Through Certificates, Series 2004-FFS.  The loan was originally serviced by JPMorgan Chase Bank, National Association ("Chase") until Ocwen Loan Servicing LLC ("Ocwen") took over the account in June 2012.  Bankr. Dkt. No. 119.

[3]  Shovlin v. Klaas, 15-cv-00802-AJS, Dkt. No. 6 at p. 2.

[4]  Stip. at ¶ 5; see also Bankr. Dkt. No. 17.

[5]  Stip. at ¶ 6.

[6]  Bankr. Dkt. No. 99.

payment, the Debtors filed an amended chapter 13 plan on January 23, 2011 which increased

their monthly plan obligation to $3,017.[7]  The amended plan also projected a four percent

dividend to unsecured creditors.[8]

The Court confirmed the amended plan on March 14, 2011.[9]  The confirmation

order directed creditors to file their objections to plan confirmation within 28 days.  It also

provided that the failure to file a timely objection would be "deemed a waiver of all objections

and an acceptance of the provisions of this confirmed plan."[10]  There were no objections to the

amended plan or the confirmation order.[11]

According to the chapter 13 trustee's records of receipts and disbursements, the

Debtors made plan payments totaling $176,769 during their bankruptcy case.[12]  From this

amount, $174,104 was paid during the first 60 months of the case.[13]  The remaining $2,665 was

---

[7]    Stip. at ¶ 7.

[8]    Bankr. Dkt. No. 102.

[9]    Stip. at ¶ 8; see also *Order of Court Confirming Plan as Modified and Setting Deadlines for Certain Actions*, dated March 14, 2011.  Bankr. Dkt. No. 106.

[10]   Id. at p. 2.

[11]   A review of the bankruptcy docket shows that the Bankruptcy Noticing Center sent a copy of the confirmation order to Petrone and his attorney, Peter Nychis.  Bankr. Dkt. No. 106.  Before Petrone's death, he was represented by Shovlin as well as Nychis, both of whom attended the Section 341(a) meeting of creditors.  Joint Pretrial Appendix at Ex.3. (Tr., Section 341(a) Meeting of Creditors (February 22, 2010) at 2-3, 8).

[12]   Stip. at ¶ 9.

[13]   Id.  The Debtors' initial 60 payments consisted of the following:

- 13 plan payments of $2,485 each on or before February 1, 2011; and

- 47 plan payments of $3,017 each on or before January 13, 2015.

Bankr. Dkt. No. 161 (Trustee's Final Accounting)

3

paid in two installments:  a payment of $1,123 on March 16, 2015, and an additional payment of $1,542 on March 23, 2015.[14]

On January 29, 2015, the chapter 13 trustee filed a motion to dismiss the bankruptcy case on the basis that, as of that date, 61 months had elapsed since the filing of the petition and $1,123 was still needed to complete the plan.[15]  Shovlin joined in the motion, arguing that the 60-month period was absolute and no further payments could be accepted after that time.[16]  The Debtors opposed dismissal and pledged to tender the remaining funds before the Court conducted a hearing on the motion.[17]

On March 24, 2015, the Debtors filed two Provider Certificates showing that each Debtor had completed a personal financial management course on February 27, 2015.[18]  The next day, March 25, 2015, Shovlin filed a supplement to her joinder, asserting that additional grounds existed to dismiss the case because the Debtors' completion of the course was untimely.[19]

The Court conducted a hearing on the motion to dismiss on March 25, 2015.  At the hearing, the trustee withdrew her motion because the Debtors paid the remaining amounts necessary to complete the plan funding.  Shovlin did not withdraw her joinder, however, and she renewed her request for dismissal of the case.  Since the Court had not yet reviewed Shovlin's supplement, it took the matter under advisement.

---

[14]     Stip. at ¶ 9.

[15]     Bankr. Dkt. No. 137.

[16]     Bankr. Dkt. No. 140.

[17]     Bankr. Doc No. 139.

[18]     Stip at ¶ 11; see also Bankr. Doc No. 147.

[19]     Bankr. Dkt. No. 149.

Shovlin initiated this adversary proceeding by filing a complaint objecting to the

Debtors' discharge on April 20, 2015.    She argued that the Debtors did not fulfill the

requirements of Section 1328, in that they had not completed plan payments within the 60-month

plan period and had not filed their certification of completion of the debtor education course

within the time limits of section 1328(g).

This Court entered its order and memorandum decision on June 4, 2015, denying

the motion to dismiss.[20]    Regarding the debtor education course, the Court found that the Debtors

were not delinquent in attending the course or in filing the certificate of completion.    Regarding

the failure to complete plan payments, the Court determined that there were no statutory or other

grounds that prohibited the Debtors from curing a plan default within a reasonable time after the

60-month plan period had expired.    The Court concluded that the Debtors had completed their

plan obligations and found no grounds to dismiss the case.

Shovlin timely appealed the Court's decision to the U.S. District Court for the

Western District of Pennsylvania.    In a memorandum order dated August 28, 2015, the District

Court affirmed Winnecour in all respects.[21]    Although the District Court focused on whether the

bankruptcy court erred in failing to dismiss the case, it made several rulings relevant to the issues

pending in this adversary proceeding.    First, it confirmed that the Debtors could make payments

outside of the original 60-month plan period when caused by unforeseeable circumstances:

> Although Sections 1322 and 1325 prohibit a debtor and a Bankruptcy
> Court from knowingly proposing and confirming a plan that extends
> beyond five years (i.e., sixty months), these Sections of the Bankruptcy
> Code do not mandate dismissal of the bankruptcy case if a debtor needs a
> reasonable period of time to cure an unanticipated arrearage incurred
> during the sixty-month plan period . . . .  Here, there was no way the

---

[20]    Winnecour v. Klaas (In re Klaas), 533 B.R. 482 (Bankr. W.D. Pa. 2015).

[21]    Shovlin v. Klaas (In re Klaas), 539 B.R. 465 (W.D. Pa. 2015).

> [Bankruptcy] Court could have anticipated that Debtors would need an
> additional two-and-a-half months to cure an arrearage incurred during the
> sixty-month period. It is undisputed that the arrearage totaled $1,123, and
> that this arrearage was promptly paid before the Bankruptcy Court held a
> hearing on Trustee's Motion to Dismiss.
>
> Moreover, the legislative history, as referenced by many of the parties to
> this case, indicates that Section 1322(d) which governs the Plan's
> duration, was created to protect the debtor from becoming a 'wage slave.'
> Thus, it would be inconsistent to utilize Section 1322(d) in such a way so
> as to dismiss Debtors' plan for relief after they made five years' worth of
> payments on their plan and cured their arrearage in a reasonable period of
> time which did not adversely affect any creditor."[22]

The District Court also determined that the Debtors were not delinquent in attending the financial

management course and, even if they had failed to timely file a certificate of completion, the

bankruptcy court possesses discretion to extend the deadline.[23]

Although Shovlin appealed the District Court's decision,[24] no stay pending appeal

was requested. Accordingly, the bankruptcy case continued to progress towards completion.

The Debtors each filed a Certification of Discharge Eligibility, asserting that they had fulfilled

all of the necessary requirements for a discharge under section 1328.[25] The trustee also sought

approval of her final report and account wherein she certified that the bankruptcy estate was fully

administered and recommended that the case be completed.[26] As part of her audit, the trustee

determined that the plan was now overfunded and she returned $1,486.49 to the Debtors in June

---

[22]    Id. at 472-73.

[23]    Id. at 474.

[24]    A timely appeal to the U.S. Court of Appeals for the Third Circuit was filed on September 24, 2015. Court
        of Appeals Case 15-3341. Bankr. Dkt. No. 207.

[25]    Stip. at ¶ 12; see also Bankr. Dkt. Nos. 150-51.

[26]    Stip. at ¶ 14.

2015.[27]   With the Court's approval of the trustee's final report and account,[28] this adversary

proceeding is the only remaining item pending before this Court in the bankruptcy case.

The Debtors now seek summary judgment in the adversary proceeding on the

basis that they satisfied all payment and other requirements imposed under the Bankruptcy Code

to receive a chapter 13 discharge.   The Trustee concurs with the Debtors' request for summary

judgment.   Shovlin opposes summary judgment and repeats her argument that the Debtors

remain ineligible for a discharge.

The parties consented to the Court issuing a ruling without oral argument.   As a

result, this matter is ripe for adjudication.   The Court has jurisdiction over this matter under 28

U.S.C. §§ 1334 and 157(b).   This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is

proper under 28 U.S.C. § 1409.

## II.

A motion for summary judgment is governed by Bankruptcy Rule 7056, which

makes Civil Rule 56 applicable in this adversary proceeding.   Pursuant to Rule 56(a), the court

"shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Bankruptcy Rule 7056,

incorporating Fed. R. Civ. P. 56(a); Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

Summary judgment is particularly appropriate where there are no disputed facts and only legal

issues remain. Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors, 518 F.2d 640, 644-45 (3d

Cir. 1975) (finding district court was correct in granting summary judgment where case involved

only "a legal, not a factual, dispute"); B & G Enters. v. United States, 220 F.3d 1318, 1322 (Fed.

Cir. 2000); In re Proxim Corp., 369 B.R. 812, 816 (Bankr. D. Del. 2007).

---

[27]      Stip. at ¶15.  After the refund, the trustee administered a total plan fund of $175,282.51.  Id. at ¶ 14.

[28]      Bankr. Dkt. No. 198.

7

The conditions for the grant of a discharge in chapter 13 proceedings are set forth in section 1328 of the Bankruptcy Code. The statute is mandatory, directing that a court "shall grant the debtor a discharge" as soon as practicable after completion of all plan payments provided the Debtors satisfy certain eligibility requirements.[29] In this case, the parties agree that the Debtors qualify for a discharge in all but two respects: section 1328(a) and (g)(1).[30] Shovlin argues that the Debtors failed to complete their plan payments within the time required by section 1322(d) and the express terms of the confirmed plan. She also claims the Debtors failed to comply with section 1328(g)(1) by timely filing certificates of completion of the postpetition debtor educational course. Shovlin believes these deficiencies disqualify the Debtors from receiving a discharge.

As the proponent of summary judgment, the Debtors have the initial burden of demonstrating the absence of a genuine question of material fact and their right to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Since the parties have stipulated that there are no disputed facts, the Debtors meet their burden upon showing that all of the requirements for entry of a discharge under section 1328 have been satisfied. The burden of persuasion then shifts to Shovlin to substantiate her claim.

Shovlin has embarked upon the road less traveled as general objections to discharge are not as common in chapter 13. Notably, Congress provided no provision in section 1328 for a general denial of a chapter 13 debtor's discharge, nor is the Bankruptcy Code's provision for general discharges, Section 727, applicable in chapter 13 cases. In re Ponteri, 31

---

[29]    11 U.S.C. § 1328(a).

[30]    It is uncontested that the Debtors do not fall within Section 1328(b),(c),(d),(e),(f), or (h), conditions that would require the denial of discharge. Stip. at ¶¶ 2-4, 16.

B.R. 859 (Bankr. D. N.J. 1983). Indeed, a leading chapter 13 treatise questions the use of

discharge objection to remedy a simple plan payment default:

> It is not clear what grounds could be asserted by the trustee or any party in
> interest to bar a debtor's discharge in a chapter 13 case. . . . A creditor or
> other party in interest might object to the entry of discharge if the debtor
> has not yet completed payments under the plan—the precondition for
> discharge under Section 1328. However, an objection to discharge on the
> ground that the debtor has not completed payments under the plan is not
> an argument that the debtor is barred from receiving a discharge in the
> chapter 13 case; rather, it is an objection that discharge is premature.
> Even if the objection is sustained, the debtor could complete payments
> under the plan and then be entitled to discharge under Section 1328.

3 Chapter 13 Bankruptcy § 9.8 (Keith M. Lunden, ed., 2d ed., 2013).

Against this backdrop, the Court observes that an objection to discharge remains

subject to certain controlling precepts, irrespective of which chapter applies. Among these is the

principle that an honest but unfortunate debtor is presumptively entitled to a fresh start.[31] As a

result, the denial of a discharge is an extreme penalty that should not be taken lightly. Rosen v.

Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993). The discharge provisions must be construed strictly

against those who object to the debtor's discharge and liberally in favor of the debtor. In re

Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995); In re Dee, 6 B.R. 784, 786 (Bankr. W.D. Pa. 1980).

To the extent that Shovlin is seeking to deny the Debtors' discharge in the context of summary

judgment, the Court concludes that her arguments are tempered by the longstanding bankruptcy

policy disfavoring general denial of discharge and it will review the merits of her claims

accordingly.

---

[31]    Local Loan Co. v. Hunt, 292 U.S. 234, 245 (1934); accord Grogan v. Garner, 498 U.S. 279, 286-287
(1991); SEC v. Bocchino, 794 F.3d 396, 380 (3d Cir. 2014). There is, of course, another primary purpose
of bankruptcy – the fair and equal treatment of creditors. Grogan, 498 U.S. at 286-87. Here, Shovlin has
not argued that Debtors are not treating their creditors in a fair and equal manner.

## A.
## Law of the Case

As a preliminary matter, the issues raised here by Shovlin are not new.  She raised each of these challenges before and they were resolved in favor of the Debtors, not once, but twice.  In decisions rendered by this Court and the District Court on Shovlin's motion to dismiss, both courts agreed that, although there was a material default by the Debtors under their confirmed plan, the default was cured within a reasonable period and did not adversely affect any creditor.  As to delinquency in filing the educational course certificates, both this Court and the District Court ruled that the certificate was filed in timely fashion consistent with section 1328 and, in any case, the bankruptcy court had discretion to extend the filing time.

The Court determines that both of these issues have been resolved under the doctrine of law of the case.  See Pepper v. United States, 562 U.S. 476, 507 (2011) (citing Ariz. v. Cal., 460 U.S. 604, 618 (1983) for the proposition that, "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."); Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation."). While a court may reconsider its decision, the Supreme Court instructs that it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988).

Where, as here, a court's rulings are affirmed on appeal, "all issues necessarily disposed of in the affirmance become law of the case" for the appellate court as well as the trial court. Coca-Cola Bottling Co. v. Coca-Cola Co., 988 F.2d 414, 429 (3d Cir. 1994).  A ruling

10

remains law of the case until reversed on appeal.  Cowgill v. Raymark Indus., Inc., 832 F.2d 798,

802 (3d Cir. 1987) (trial court determinations which are not reversed on appeal remain the law of

the case).[32]

      The two issues in this motion for summary judgment, having previously been

decided, fall within the purview of law of the case.  Moreover, Shovlin has failed to produce

proof of extraordinary circumstances, such as newly discovered evidence or recently issued

controlling precedent, that justify a re-examination.[33]  Since the Court previously determined that

the Debtors' actions did not justify dismissal of the case, it similarly concludes that, under the

law of the case, the Debtors have shown that they are entitled to a discharge under section 1328,

and Shovlin cannot, as a matter of law, support her objections to discharge.

      While the Court will adhere to the law of the case, the application of that doctrine

does not limit this Court's discretion to expand and clarify its prior rulings upon consideration of

the motion for summary judgment and in light of the insightful analysis of the District Court.[34]

Accordingly, the Court finds it is appropriate to address certain additional nuances related to the

issues previously presented in the case.

---

[32]    The Court is aware that the District Court's opinion in Shovlin has been appealed, but unless and until the
Third Circuit reverses the District Court's ruling (and, by implication, this Court's holding), the doctrine of
law of the case continues to apply.

[33]    See Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008) ("Law of the case counsels a court against revisiting
its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as an
'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error
or prevent manifest injustice.'"

[34]    Messenger v. Anderson, 225 U.S. 436, 444 (1912) (the law of the case doctrine "merely expresses the
practice of courts generally to refuse to reopen what has been decided, not a limit to their power."); United
States v. U.S. Smelting Ref. & Min. Co., 339 U.S. 186, 199 (1950) ("the 'law of the case' is only a
discretionary rule of practice."); Magnesium Elektron, Inc., 123 F.3d at 116 (the "doctrine does not limit a
federal court's power; rather, it directs its exercise of discretion").

**B.**

At the heart of Shovlin's position is her repeated argument that Section 1322 specifically limits a debtor's plan to a 60-month repayment period. Shovlin wishes to read into the statute a further requirement that, not only must a plan not exceed 60 months in duration, but all payments must be completed within the 60th month, without exception. To reach this conclusion, Shovlin asserts that the 60-month limitation established in section 1322 applies with equal force to the time within which payments can be made because section 1325 mandates that all plans comply with the other applicable provisions of chapter 13.[35]

Both this Court and the District Court found no basis to read the Bankruptcy Code in this way. The plain meaning of sections 1322 and 1325 is that the 60-month duration relates to the requirements for plan confirmation, not to any prohibition against the receipt of payments made after the plan term expires. The Court also finds nothing in the statutes, legislative history, or case law suggesting that Congress imposed a 60-month term to preclude voluntary payments made at the conclusion of the plan to cure shortfalls in plan funding. On the contrary, the consensus of authority recognizes that Congress limited the plan term so that debtors would not be *required* to make plans with payment terms extending beyond 60 months.[36]

Aside from the plain meaning of the statute, the majority of cases reviewed in this matter hold that a shortfall in plan payments may be cured within a reasonable time after the 60th

---

[35]    Shovlin offers the recurring argument that "Congress did not leave the matter open to interpretation – a chapter 13 plan providing for payments over a period of more than 5 years cannot get off the ground." Shovlin v. Klaas, 15-cv-00802-AJS, Dkt. No. 6 at p. 12.

[36]    Chapter 13 was designed to allow individual debtors, with regular income, "to develop and perform under a plan for the repayment of . . . debts over an extended period." H.R. Rep. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. at p. 118 (1977). The limitation was intended to serve as a protection for debtors as Congress observed that wage earner plans in some cases under the old Bankruptcy Act were allowed to drag on for "seven to ten years" which was more indicative of "indentured servitude" than a debt readjustment plan. Id. at p. 117.

payment at the discretion of the bankruptcy court. This view was succinctly summarized in

*Collier on Bankruptcy*:

> ... the fact that a debtor does not actually conclude the payments within
> the stated period does not constitute a violation of section 1322(d). The
> subsection focuses on the payments provided for by the plan. If payments
> are late, but the debtor is substantially complying with the plan, the court
> should allow the plan to be completed within a reasonable time after the
> stated term.

8 COLLIER ON BANKRUPTCY, ¶ 1322.18 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.

2015); see also THE CHAPTER 13 PLAN, 3A-34 Debtor-Creditor Law § 34.10, at 16 (Matthew

Bender & Co. 2010).[37]

Shovlin now relies on a much smaller, and older, group of cases to support her

position that payments may not be made after the 60th month. The cases cited by Shovlin, In re

Jackson, 189 B.R. 213 (Bankr. M.D. Ala. 1995) and In re Woodall, 81 B.R. 17, 18 (Bankr. E.D.

Ark. 1987), have been taken into consideration by more recent courts and their positions were

rejected. See In re Henry, 343 B.R. at 194. Indeed, the Henry court commented that, if

Congress preferred the positions taken by the Jackson and Woodall courts, it could have

---

[37]    The courts holding this position include: In re Henry, 343 B.R. 190, 194 (Bankr. N.D. Ill. 2006) ("This
court will follow the more recent trend that rejects Jackson and Woodall and allows debtors to continue
making payments that stretch beyond 60 months if the plan can be completed within a reasonable period of
time."), aff'd Marshall v. Henry (In re Henry), 368 B.R. 696 (N.D. Ill. 2007); In re Baril, 2015 Bankr.
LEXIS 1357 (Bankr. D. Me. April 10, 2015) (bankruptcy court extended payment period for a $7,000 plan
shortfall); In re Morris, 2012 Bankr. LEXIS 2889, at *28 (Bankr. S.D. Fla. 2014) ("Although the monthly
payments under the Modified Plan would normally end in March 2014, the Court has discretion to allow
the debtors to complete the plan payments beyond the applicable commitment period."); In re Hill, 374
B.R. 745, 750 (Bankr. S.D. Cal. 2007); In re Brown, 296 B.R. 20, 22 (Bankr. S.D. Cal. 2003) (holding that
the court "should allow the plan to be completed within a reasonable time" and "the court rejects this
draconian interpretation of the Bankruptcy Code"); In re Aubain, 296 B.R. 624 (Bankr. E.D.N.Y. 2003)
(debtor allowed to cure a default on already-scheduled payments even after sixty months had elapsed); In re
Harter, 279 B.R. 284, 288 (Bankr. S.D. Cal. 2002) (holding that nothing in the Code imposes a "drop dead"
date on a debtor for completion of a confirmed plan); In re Ricitelli, 2001 Bankr. LEXIS 2309 (Bankr.
D.Vt. May 3, 2001); In re Garcia, 2000 WL 420665 (Bankr. N.D. Cal. 2000) (changes in disbursements
during plan may require payments after sixtieth month); In re Black, 78 B.R. 840, 843 (Bankr. S.D. Ohio
1987) (payments beyond sixty months do not have adverse consequences and may continue for a "few
months").

amended and clarified the Bankruptcy Code when it enacted the Bankruptcy Abuse Prevention
and Consumer Protection Act of 2005. Id.

Shovlin cites to a more recent case for the proposition that "[i]f, in the future,
Congress wants to permit longer Chapter 13 plans, it can so legislate." In re Grant, 428 B.R.
504, 508 (Bankr. N.D. Ill. 2010). This Court cannot disagree with that self-evident statement,
but it ignores the more salient and unambiguous conclusion of the Grant court that any "decision
to allow continued payments after five years is left to the Court's discretion." Id. at 507. The
Grant court simply chose not to exercise its discretion to allow payments after the 60th month
under the facts of that case, but it held that a bankruptcy court had the power to do so.[38]

In this case, the Debtors developed, presented, and confirmed a plan consistent
with the known factors needed to fund the plan. At the time of final confirmation, the Debtors
determined that a funding base of $174,059.24 was required to satisfy all plan obligations.[39] The
trustee, Petrone, and Shovlin were given notice of these calculations, but they did not object to
the plan or otherwise challenge the sufficiency of the plan funding.

The Debtors made each of the payments called for under their confirmed plan.
According to the trustee's records, the Debtors paid 13 monthly installments of $2,485 each and
tendered an additional 47 payments at the rate of $3,017 per month as contemplated by the
amended plan. In sum, the Debtors paid $174,104 during the plan term, an amount which
slightly exceeded their plan projection. Thus, at the time of completing their 60th payment in

---

[38] Shovlin relies on two other cases which are equally inapposite, In re Goude, 201 B.R. 275, 277 (Bankr. D.
Or. 1996) and Wells Fargo Home Mortg., Inc. v. Borkowski (In re Borkowski), 446 B.R. 220, 225 (Bankr.
W.D. Pa. 2011). The problem faced by the Goude court was that the debtors failed to pay priority tax
claims in full under their confirmed plan and lacked sufficient funds to satisfy the remaining obligations.
Thus, the case involved an uncured payment default and had nothing to do with the satisfaction of plan
obligations after the 60th month. As to Borkowski, the Court previously distinguished it from the facts of
this case and finds no basis to depart from that finding now. In re Winnecour, 533 B.R. at 489 n.9.

[39] Bankr. Dkt. 106.

14

January 2015, the Debtors had every reason to believe that they had paid all of the amounts

necessary to satisfy their plan funding obligations.

If the Debtors made all of the required payments, how could the plan be

underfunded?  The answer, at least in part, is attributable to an increase in the trustee's

administrative fee.  In the confirmed plan, the Debtors projected the trustee's fees to be 2.8% of

the total amount disbursed under the plan.  Indeed, this appears to have been the rate in effect at

the time the plan was confirmed.  Based on this calculation, the Debtors budgeted approximately

$4,740 for the trustee's fee.  However, the fee did not remain static throughout the plan term.

Pursuant to 28 U.S.C. §586(e)(1)(B), the trustee's fee may be periodically adjusted, and during

the five-year term of the Debtors' plan, the fee increased from 2.8 to 4.1 percent.  As a result, the

trustee received $5,446.27 for her administrative fees, an amount which exceeded the original

plan projection by over $700.[40]

In short, the Debtors diligently completed all 60 payments specified in their

confirmed plan.  Although a material default occurred at the end of the plan term because the

funding was insufficient, more than half of the $1,123 shortfall was attributable to an

unforeseeable increase in the trustee's administrative fee.  The Debtors promptly cured the

default within a reasonable period of time and there is no evidence to suggest that creditors were

harmed by the brief delay.  This Court concludes that the law of the case, the interpretation of

sections 1322(d) and 1328(a), and the significant majority of cases on point support the Court's

holding that the Debtors are entitled to cure an unforeseeable default within a reasonable time

---

[40]    The Court finds nothing in the record to indicate precisely when the trustee's fees were increased or
whether the parties received advance notice so that a corresponding change to the plan funding could be
made.  The Court was able to discern the fees only after it examined the trustee's final report and
disbursement ledger.  Since none of the parties objected to the calculation of the trustee's fees (as set forth
in the final report), nor did they raise the issue of notice, the Court finds no basis to wade into these issues
at this time.

that does not prejudice creditors.  Without any basis to conclude that the Debtors acted in bad faith or are otherwise ineligible for relief under section 1328, the Court finds that the Debtors are entitled to a discharge of their debts.

**C.**

Section 1328(g) of the Bankruptcy Code requires all debtors to complete an instructional course on personal financial management as a condition to receiving a discharge in a chapter 13 case.[41]  In her complaint, Shovlin charges that the statement certifying completion of the course was filed late, the Debtors did not seek an extension of time to file the document, and thus discharge should be denied.

As both this Court and the District Court determined, this is a nonissue.  The Debtors were not delinquent in attending the personal financial management course, nor did they tardily file the statement of completion.  <u>Winnecour</u>, 533 B.R. at 450; <u>In re Shovlin</u>, 539 B.R. at 474.  Fed. R. Bankr. P. 1007(c)  provides that the statement of completion in a chapter 13 case must be filed "no later than the date when the last payment was made by the debtor as required by the plan[.]"  The Debtors' statements of completion were filed on March 24, 2015, the same day that they made the last payment to fulfill their plan.  And even if that submission was late, Rule 1007(c) gives this Court broad discretion to enlarge that time.  Upon finding no basis in the record to strike the certificates, the Court concludes that, under the law of the case and Bankruptcy Rule 1007(c), the Debtors completed their personal financial management course and submitted their completion certificates in a timely manner.

---

[41]  In her opposition to the motion for summary judgment, Shovlin has not discussed or made any reference to this issue.  Since it was raised in the complaint, the Court will address it here for completeness in consideration of the motion.

## III.

The Debtors completed their plan according to its terms over a five-year period in a timely and faithful manner.  Although there was a small shortfall caused by unforeseeable conditions, the Debtors completed their plan obligations within a reasonable 46-day period after being advised of the deficiency.  Upon finding that creditors suffered no adverse impact as a result of the delay, and in light of the law of the case, statutory interpretation, case law, and the undisputed facts of this case, the Debtors are entitled to a discharge under Section 1328.

For the reasons cited above, the Debtors' motion for summary judgment is **GRANTED** and Shovlin's objections to discharge are **OVERRULED**.

Dated: March 1, 2016

_____
GREGORY L. TADDONIO
United States Bankruptcy Judge

17